**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

WALTER B. NEAL, JR.,

    Plaintiff,

v.

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:25-cv-02802-BCL-tmp

---

### ORDER AFFIRMING DECISION OF THE COMMISSSIONER

---

Plaintiff Walter B. Neal, Jr. seeks judicial review of the Commissioner of Social Security Administration's ("SSA") decision denying his Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"). For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

### BACKGROUND

On August 23, 2022, Plaintiff applied for DIB and SSI under Titles II and XVI of the Act. In support of his claims, Plaintiff asserted "right hand numb to wrist due to job injury and right ankle cannot have too much on" Doc. 13 at 60. Plaintiff's hand pain was caused by an injury involving a chainsaw, which caused a deep laceration across his right hand, resulting in a sensory disturbance and diminished mobility of the wrist and index finger. *Id*. at 397. Plaintiff's claims were initially denied on July 21, 2023, and again, on reconsideration, on September 2, 2023. *Id*.

On or about September 14, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. Plaintiff appeared and testified at the hearing held on July 24, 2024. *Id*. On August 9, 2024, the ALJ determined Plaintiff was not considered "disabled" under the Act. *Id*. at 33. The ALJ found that "claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could occasionally climb, kneel, crouch, and crawl; could frequently balance and stoop; and could frequently handle, finger, and feel with the right dominant upper extremity." *Id*. at 28.   The ALJ also found that there existed a significant number of jobs in the national economy that Plaintiff could perform despite his impairments. Doc. 13 at 32-33.

On October 8, 2024, Plaintiff appealed the decision of the ALJ to the Social Security Administration's Appeals Council. Doc. 13 at 5. The Council found no reason under their rules to review the ALJ's decision and denied Plaintiff's request for review on June 10, 2025. Doc. 13 at 5-9.

On August 8, 2025, Plaintiff filed the present action in this Court seeking judicial review of the Commissioner of SSA's decision to deny his DIB and SSI claims. Doc. 1. Plaintiff filed his Opening Brief in Support of a Social Security Appeal on October 24, 2025. Doc. 15. On December 10, 2025, the Commissioner of Social Security filed a Responsive Brief. Doc. 16. Plaintiff filed a Reply Brief on December 22, 2025. Doc. 17. The matter was transferred to the undersigned on March 4, 2026. Doc. 18.

## LEGAL STANDARD

### I.    Standard of Review

In Social Security cases, the District Court "review[s] whether the ALJ 'applied the correct legal standards and whether the[ir] findings ... are supported by substantial evidence.'" *Norris v.*

*Comm'r of Soc. Sec.*, 139 F.4th 541, 545 (6th Cir. 2025). "A finding is supported by substantial evidence if there is more than a mere scintilla of evidence that a reasonable mind might accept as adequate to support [the] conclusion." *Id*. (internal citations omitted). The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). "If substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id*.

## II.      Five-Step Evaluation Process

To qualify for disability benefits, an applicant must be disabled as defined by the Social Security Act. 42 U.S.C. § 423(a)(1)(E). Congress defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ employs a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five" to prove that there is work available in the economy. *Norris*, 139 F.4th at 545 (internal citation omitted). 20 C.F.R. § 404.1520 lays out how disability benefit claims are evaluated as follows:

(i)      At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii)     At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii)    At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv)    At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v)    At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. 404.1520(e). RFC represents an individual's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). When assessing physical abilities, the ALJ first looks to the nature and extent of the applicant's physical limitations and then determines applicant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [the applicant's] ability to do past work and other work." *Id*. To determine RFC, the ALJ considers all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1).

As it relates to relevant medical evidence, the Code of Federal Regulations states:

We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

4

including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed [below].

20 C.F.R. § 404.1520c. The most important factors an ALJ must consider in evaluating the persuasiveness of medical opinions and findings are supportability and consistency. *Id*. Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. Consistency means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*.

## ANALYSIS

Plaintiff's appeal concerns the ALJ's findings regarding Plaintiff's RFC as to his hand injury. Doc. 15. The ALJ's findings regarding Plaintiff's RFC rested in part on a finding that Plaintiff "could frequently handle, finger, and feel with the right dominant upper extremity." Doc. 13 at 28. Plaintiff argues that this finding either lacked substantial evidence or was insufficiently explained because two doctors— Dr. McGuffin and Dr. Keown—testified that he was limited in his ability to finger or handle with his right hand, and the ALJ otherwise credited their opinions without either crediting their opinions on handling and fingering or explaining its refusal to do so.

While an ALJ need not adopt every limitation recognized by a medical source (even one it considers persuasive), *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), the ALJ must explain why it has not adopted those parts of an opinion that it rejects, *Kinney v. Comm'r Soc. Sec.*, 2024 WL 2273365, at *3 (6th Cir. 2024). However, due to the "deferential standard of

5

review" findings must not be "label[led] as inconsistent if they can be harmonized," and "[m]inor inconsistencies in wording or phrasing do not rise to the level of reversible error." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018).

Plaintiff's argument fails because there are no inconsistencies. Dr. McKeown opined that Plaintiff could only flex his right index finger to 60 degrees and therefore could not perform tasks that required "full mobility" of that finger, but that "[h]e can engage the other digits for fine and gross movement in a manner that is unimpaired." Doc. 13 at 399. Dr. McGuffin offered a similar opinion: Plaintiff "[h]as reduced use of right [index] finger MCP joint, however normal use of all other fingers on right hand and full use of left hand"—with the "manipulation limitation" identified being "Limited right" for "fingering (fine manipulation)." Doc. 13 at 60. None of that is inconsistent with the ALJ's finding that Plaintiff could "frequently handle, finger, and feel with the right dominant upper extremity." Dr. McKeown said nothing at all on the subject, and even crediting Dr. McGuffin's opinion of "Limited right … fingering (fine manipulation)," Dr. McGuffin's opinion explicitly concerned the right index finger, not the other fingers on that hand. Doc. 13 at 63, 64.

As the Government observes, that leaves room for the ALJ's conclusion that Plaintiff could use those other fingers to "handle, finger, and feel with the right dominant upper extremity." Doc. 13 at 29. And that suffices to require affirmance, even if portions of the ALJ's opinion are awkwardly or confusingly written. *Chismarich*, 888 F.3d at 980. Specifically, Plaintiff makes much of the ALJ's statement that, while he found "persuasive the majority of" Dr. McGuffin's opinions, he:

> Finds less persuasive Dr. McGuffin's opined manipulative limitations *because his finding that the claimant could not perform duties that required the use of the right finger metacarpophalangeal joint (See Exhibits 2A/5; 4A/5) tends to support the claimant would be limited in manipulating objects in a manner that would result in*

> *a decreased ability to feel and handle as well.* Additionally, the objective findings of decreased range of motion of the right hand, decreased sensation in the right hand, and decreased flexion and extension of the index finger of the right hand (See Exhibit 4F/5) *further support the claimant's limitation in feeling and handling with the right upper extremity.*

Doc. 13 at 30-31 (emphasis added). Although his argument is somewhat difficult to parse, the bottom line appears to be that Plaintiff views the italicized language as a finding by the ALJ that Plaintiff was in fact limited as he claims, so that he "should have additional right hand manipulative limitations" not reflected in the ALJ's ultimate conclusion. Doc. 15 at 6. Plaintiff makes a similar claim of inconsistency concerning the ALJ's statement that the ALJ "finds persuasive Dr. Keown's opinion that the claimant cannot perform work that requires full mobility of his right index metacarpophalangeal joint *to the extent that this limitation would allow the claimant to be able to frequently perform feeling, fingering, and handling with his right upper extremity.*" Doc. 13 at 31.

To be sure, these passages are unartfully drafted, but there is no inconsistency—and certainly no necessary inconsistency. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018). Begin with the ALJ's discussion of Dr. McGuffin's opinions: The ALJ's statements can be read— indeed are best read—as rejecting Dr. McGuffin's opinions on manipulative limitations and limitations concerning range of motion, sensation, and flexion only in the sense that he concluded that those limitations also supported a conclusion that Plaintiff is limited to "frequently handling … and feeling"—not just "frequently … fingering"—despite Dr. McGuffin's failure to identify *any* limitations in those areas. In other words, the rejection of Dr. McGuffin's findings worked in Plaintiff's favor by moving from no limitation to a limitation where Plaintiff could only undertake the activities "frequently," but it did not work in Plaintiff's favor as much as he would have liked. And the ALJ likewise agreed with Dr. Keown's findings and that they supported a degree of

7

impairment, even if not as much impairment as Plaintiff advocated.  Without the inconsistency that serves as its foundation, Plaintiff's argument falls apart.

Finally, and independently, the ALJ's findings concerning Plaintiff's limitations are consistent with and supported by Plaintiff's own testimony. As the ALJ recounted:

> While the claimant testified at the hearing that he cannot flex his hand, make a fist with his right hand, or hold a hammer with his right hand, *he stated he could work buttons, snaps, and zippers, he could write his name, and he could lift and pour a gallon of milk with his right hand (Hearing Record). Based on this evidence, and the lack of consistent, ongoing treatment*, the claimant's fracture of the right second metacarpal withtendon laceration and upper extremity soft tissue injury are not disabling.

Doc. 13 at 29 (emphasis added); *see also id.* at 29-30 (recounting that Plaintiff can "perform acts of personal care," that he cooks and performs household chores, that he draws and plays cards and dominos, and that he writes to complete paperwork).  Thus, substantial evidence supported the ALJ's finding even assuming the ALJ misunderstood or mishandled the opinions of Dr. McGuffin and Dr. Keown. For this reason, too, the Court must affirm. *See Ulman v. Comm'r of Social Security*, 693 F.3d 709, 714 (6th Cir. 2012) (where one basis for ALJ's credibility determination was "mistaken," affirming because other basis supplied substantial evidence for credibility determination); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (noting that a reviewing court should look to the record as a whole to determine if substantial evidence supports the ALJ's decision, even if the ALJ failed to cite or adequately explain of every piece of evidence).

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision that Plaintiff is not disabled under the Social Security Act.

**IT IS SO ORDERED**, this 30th day of April, 2026.

s/ *Brian C. Lea*
_____

BRIAN C. LEA
UNITED STATES DISTRICT JUDGE